Affirmed and Memorandum Opinion filed November 23, 2005









Affirmed
and Memorandum Opinion filed November 23, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00321-CR

____________

 

CHRISTOPHER
McGREW, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

___________________________________________________

 

On Appeal from the 232nd District Court

Harris County, Texas

Trial Court Cause No. 956,678

___________________________________________________

 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant
Christopher McGrew of felony assault on a public servant, sentenced him to
eight years in prison and imposed a two thousand dollar fine.  In two issues, appellant challenges (1) the
legal sufficiency of the evidence supporting his conviction, and (2) the trial
court=s
decision to include an instruction on voluntary intoxication in the jury
charge.  We affirm.








I.  Factual and Procedural Background

In the early morning hours of
July 28, 2003, several employees of the Afton Oaks Nursing Home in Houston,
Texas, discovered a Asuspicious@ looking
individual wandering in and around the premises.  An employee called the police and provided a
description of a male and a vehicle with a license plate matching appellant=s.  An officer dispatched to the nursing home
spotted appellant in his car at a nearby gas station.  Appellant resisted the officer=s
attempts to detain him, and a physical struggle ensued.  Although the officer attempted to subdue
appellant by spraying him with pepper spray, appellant ran from the scene,
first to a nearby machine shop and then to a private residence.  Additional officers were sent to the area,
one of whom tackled appellant as he attempted to flee the residence.  Appellant was subsequently handcuffed and
taken into custody.

During the struggle, appellant
sustained head injuries requiring medical care. 
He was taken to Ben Taub Hospital, accompanied by Officer L.T. Truman of
the Houston Police Department.  While
undergoing treatment at the hospital, appellant=s right
hand was cuffed to his hospital bed. 
After appellant was discharged from the hospital, Truman attempted to
uncuff appellant=s hand
from the hospital bed in order to re-cuff his two hands behind his back.  As Truman uncuffed appellant=s hand,
appellant punched Truman in the face with his left hand, knocking off Truman=s
glasses, and breaking a crown in Truman=s
tooth.  Appellant then lunged at Truman
and attempted to grab Truman=s gun,
but was restrained by other officers at the hospital.  A jury convicted appellant of felony assault
on a public servant and sentenced him to eight years in prison.  This appeal ensued.

II.  Discussion

A.        Is the Evidence Legally Sufficient to Support Appellant=s
Conviction?








In his first issue, appellant
contends there is a fatal variance between the indictment and the evidence
offered by the state at trial, and thus, he argues the evidence is legally
insufficient to support his conviction. 
The indictment charges appellant with Aintentionally
and knowingly caus[ing] bodily injury to . . . a person the Defendant knew was
a public servant while [Truman] was lawfully discharging an official duty, to
wit: assisting to detain [appellant] by striking [Truman] with his hand.@  Appellant argues that because he was already
under arrest, Truman could not have been Aassisting
to detain@ him.

A variance between an indictment
and the proof offered at trial is fatal to a conviction only when it is
material.  Rickerson v. State, 138
S.W.3d 528, 530 (Tex. App.CHouston
[14th Dist.] 2004, pet. ref=d)
(citing Gollihar v. State, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001)).  A variance is material if it prejudices the
defendant=s substantial rights, namely: (1)
it fails to inform the defendant of the charge against him sufficiently to
prepare an adequate defense at trial, or (2) it subjects the defendant to the
risk of being prosecuted later for the same crime.  Id. 









Appellant argues he was not
sufficiently informed of the charge against him. We disagree.  First, the indictment specifically identifies
Truman as the complainant in the case, and the evidence shows that there was
only one instance in which appellant struck Truman with his hand.  Second, we do not find the description of
Truman=s
official duty is misleading.  This court
has adopted a definition of Adetain@ to mean,
ATo
restrain as to possession of personality. 
To arrest, to check, to delay, to hinder, to hold or keep in custody,
to retard, to restrain from proceeding, to stay, to stop.@  Casey v. State, 681 S.W.2d 178, 181
(Tex. App.CHouston [14th Dist.] 1984, pet.
ref=d)
(emphasis added).  Truman was assigned
the task of accompanying appellant from the private residence to the hospital
and, upon discharge from the hospital, to the county jail.  The record shows that appellant had his hands
cuffed behind his back at the time Truman arrived at the residence and that one
of appellant=s hands was cuffed to the
hospital bed upon his admission to the hospital.  At the time appellant struck Truman, Truman
was attempting to re-cuff appellant=s hands
behind his back so that he could be transported to the jail.  Truman was ordered to hold, or to keep
appellant in custody while he was being treated at the hospital. Therefore, we
conclude Aassisting to detain@ is an
accurate description of Truman=s
responsibilities vis-a-vis the appellant. 
Third, the record indicates that appellant was aware of the conduct for
which he was being charged and was not prevented from preparing an adequate
defense.  Counsel for appellant attempted
to convince the jury that appellant was acting in self defense when he struck
Truman.  Although the jury was ultimately
unpersuaded by this argument, appellant was sufficiently informed of the charge
against him so as to prepare an adequate defense.  

Finally, appellant alleges that
he could be subsequently prosecuted for the same offense if Truman=s duty
were recharacterized in a later indictment as Aeffecting
transport@ of appellant.  We disagree. 
Texas courts will refer to the entire record, not just the indictment,
in order to protect against double jeopardy in the event of a subsequent prosecution.  Gollihar, 46 S.W.3d at 258 (citing United
States v. Apodaca, 843 F.2d 420, 430 n.3 (10th Cir. 1988).  Here, the record reflects that (a) only one
officer named L.T. Truman was assaulted by appellant on July 28, 2003; (b)
appellant assaulted Truman only one time on July 28, 2003; and (c) a jury
convicted appellant for that assault. 
Thus, any efforts to re-prosecute appellant for assaulting L.T. Truman
on July 28, 2003 would be futile, regardless of the verbiage used to describe
Truman=s
official duties.  For these reasons, as
well as the reasons outlined in the previous section, the indictment described
the offense with sufficient specificity so as to eliminate any concern that
appellant could be placed in double jeopardy. 
Accordingly, we overrule appellant=s first
issue.

B.        Did the Trial Court=s Jury Instruction on
Voluntary Intoxication Constitute     Reversible
Error?

 

Appellant argues for the first
time on appeal that the trial court erred in including the following
instruction to the jury in the guilt-innocence phase of the trial:








Voluntary intoxication
does not constitute a defense to the commission of a crime.  Intoxication means disturbance of mental or
physical capacity resulting from the introduction of any substance into the
body.

 

Because appellant did not rely on
any defense related to intoxication, he argues that his conviction should be
reversed and remanded for a new trial.

The first
step in analyzing a jury charge issue is to determine whether error
exists.  Ngo v. State, __ S.W.3d
__, __ (Tex. Crim. App. 2005) (en banc). 
If we find error, we analyze the error for harm.  Id. 
Where, as here, appellant did not voice a jury charge objection to the
trial court, an error does not warrant reversal unless the record shows Aegregious
harm@ to the
appellant.  Hudson v. State, __
S.W.3d __, __ (Tex. App.CHouston
[14th Dist.] 2005, no pet. h.); Alamanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1984) (en banc).  Errors
resulting in egregious harm are those which affect the very basis of the case,
deprive the defendant of a valuable right, or vitally affect a defense
theory.  Hudson, __ S.W.3d at __
(citing Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (en
banc)).  








A trial
court must instruct the jury on the law applicable to the case.  Tex.
Code. Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2003).  The trial court is to charge the jury with an
instruction on voluntary intoxication, Awhen
temporary insanity is relied upon as a defense and the evidence tends to show
that such insanity was caused by intoxication.@  Tex.
Penal Code Ann. ' 8.04(c)
(Vernon 2005).  This is not the only
circumstance, however, when such an instruction can be given.  Taylor v. State, 885 S.W.2d 154, 156
(Tex. Crim. App. 1994) (en banc).[1]  If there is evidence from any source that
might lead a jury to conclude the defendant=s
intoxication somehow excused his actions, an instruction is appropriate.  Id. at 158.

In the
present case, both sides offered the jury an explanation for appellant=s
behavior and demeanor.  The prosecution
elicited the following testimony from the officer who tackled appellant outside
the private residence:

I pointed my pistol at the
individual and stated, show me your hands. . . .  The defendant replied to meClooked me directly in the
eyes, real cold said, >don=t point your gun at me= and turned around and
started fumbling for the kitchen door. . . . 
I was under the impression from his demeanor, the cold stare, is that in
my mind, he was on Fry. . . .[2]

 

On cross-examination, appellant=s counsel
explored the officer=s
assertions:

Q: Does someone on FryChow do they behave?

A: Usually sweating
profusely.  The very cold stare.  It=s like you=re talking to an
individual and they=re like looking right
through you.  It=s almost like you know
they just want to rip your head off. . . . I=ve encountered, you know,
suspects a hundred and twenty poundsCalmost half my body weightCon Fry and they=re extremely strong,
extremely . . . .

Q: You testified that he
was on Fry because of his super human strength or incredible strength . . .
.  Could it be possible that he=s just strong?

A: I guess it could
possibly be.

 








The officer also testified that
running for several blocks, sustaining multiple doses of pepper spray, or being
nervous, scared, or mentally retarded might also have factored into appellant=s
demeanor.  Because both the State and the
defense=s
explanations for appellant=s actions
were plausible but not fully substantiated, the jury could have found appellant=s actions
would have been excused if he had been intoxicated.[3]  Therefore, we conclude that the trial court
properly exercised its discretion to include the instruction.  In light of this conclusion, we need not
address the issue of harm.  Accordingly,
appellant=s second issue is overruled.

III. 
Conclusion

We hold
that appellant waived his complaint regarding an alleged variance in the
indictment and that the trial judge did not err in including a jury instruction
on voluntary intoxication.  The judgment
is affirmed.

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum Opinion filed November 23, 2005.

Panel consists of Justices Edelman, Seymore, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 

 











[1]  Appellant
directs us to Gonzales v. State, in which the First Court of Appeals
held that an instruction on voluntary intoxication was not justified because
the appellant did not claim that temporary insanity or that his drinking
excused his acts.  838 S.W.3d 848, 866
(Tex. App.CHouston [1st Dist.] 1992, pet. dism=d).  However,
the Gonzales case pre-dates the Court of Criminal Appeals= holding in Taylor.  There, the Court expressly held that a
defendant does not need to rely upon intoxication as a defense in order for the
instruction to be given.  Taylor,
885 S.W.2d at 158.





[2]  The officer
later testified that AFry@ is a marijuana cigarette soaked in PCP.





[3]  In his closing
argument, the prosecutor noted that the evidence on drug use was inconclusive: A[There=s] nothing in [the medical report] about drugs.  Nothing saying there were drugs, nothing
saying there weren=t drugs.  Does
say there wasn=t any alcohol, but no drugs.  I don=t know
if there were drugs.  They didn=t test him for it.@