In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00020-CV


______________________________





IN RE: KIM WAYNE BURDEN









 


Original Mandamus Proceeding









 
 



Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley








MEMORANDUM OPINION



 Kim Wayne Burden petitions this Court, in his Third Petition for Writ of Mandamus, to
compel the Honorable William Porter, Judge of the 276th Judicial District, to rule on his Motion for
Expungement of Records and to "SHOW FINDING[S] OF FACTS [SIC] AND CONCLUSIONS
OF LAW." 

 Burden asserts that this Court "has been given fully the evidence it needs" to rule on his
petition; Burden asserts that this Court knows what is being requested. Burden references, but does
not attach, an affidavit certifying service of an underlying document and directs us, should we find
that insufficient, to independently request mailroom records from the penal institution from which
he sent the document. Burden asks us to consider his prior petitions for writ of mandamus, but does
not attach them. Burden also references a court document attached to a prior petition, but does not
re-attach it. In sum, Burden has included no record or appendix. See, e.g., Tex. R. App. P. 52.3(j)(1)
(necessary contents of appendix), 52.7(a) (record required to be filed). Moreover, no factual
statement in Burden's current petition is verified. See Tex. R. App. P. 52.3. 

 It is the relator's burden to provide this Court with a sufficient record to establish his right
to mandamus relief. Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992); In re Pilgrim's Pride
Corp., 187 S.W.3d 197, 198-99 (Tex. App.--Texarkana 2006, orig. proceeding); see Tex. R. App.
P. 52.3. Burden has provided this Court with no copies of any document that shows he is entitled
to the requested relief. See Tex. R. App. P. 52.3(j). On the record presented, we cannot say that
Burden has established his right to mandamus to compel the trial court to hear his motion or to show
findings of fact and conclusions of law.

 Accordingly, we deny Burden's petition for writ of mandamus. See Tex. R. App. P. 52.8(a).




 Bailey C. Moseley

 Justice


Date Submitted: February 14, 2008

Date Decided: February 15, 2008





ne defendants in custody
to the courtroom and not allow them to leave the courtroom without being escorted by a deputy. 
Hutchinson testified he had never, while in custody, been allowed to exit the courtroom without a
deputy being with him. Several witnesses testified they knew of no one giving Hutchinson
permission to leave the courtroom. Hutchinson testified he was not aware of what he was doing or
what was going on from the time the verdict was read until he was in handcuffs after having been
tackled.

 Hutchinson does not dispute that he was charged with a felony offense at the time of his
alleged escape, that he was in the custody of Stewart, or that leaving the courtroom was
unauthorized. His only challenge is to the sufficiency of the evidence to show his unauthorized
departure was also a departure from custody. 

 In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979), and Geesa v.
State, 820 S.W.2d 154 (Tex. Crim. App. 1991), and look to see whether, after viewing the evidence
in the light most favorable to the prosecution, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. In our review of the factual sufficiency of the
evidence, we view all the evidence and set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996); Lisai v. State, 875 S.W.2d 35, 37 (Tex. App.-Texarkana 1994,
pet. ref'd); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.-Austin 1992, pet. ref'd, untimely filed). 
In both sufficiency reviews, the trier of fact may draw reasonable inferences and is the exclusive
judge of the witnesses' credibility and the weight to give their testimonies. See Jones v. State, 944
S.W.2d 642, 647-49 (Tex. Crim. App. 1996); Bruno v. State, 922 S.W.2d 292, 293 (Tex.
App.-Amarillo 1996, no pet.).

 The offense of escape is comprised of three elements: (1) escape (2) from custody (3) after
having been arrested for, charged with, or convicted of an offense. Tex. Pen. Code Ann. § 38.06(a)
(Vernon Supp. 2002); Scott v. State, 672 S.W.2d 465, 466 (Tex. Crim. App. 1984). Escape is
defined as an "unauthorized departure from custody." Lawhorn v. State, 898 S.W.2d 886, 890 (Tex.
Crim. App. 1995). Custody is not limited to actual, physical "hands-on" restraint, but in the context
of escape, is more than the right to control; it implies a degree of physical limitation, restraint, or
control the nature and scope of which depends on the facts of each case. See Lawhorn v. State, 843
S.W.2d 268, 270 (Tex. App.-Austin, 1992), aff'd, 898 S.W.2d 886 (Tex. Crim. App. 1995). Such
limitation or restraint may be demonstrated by showing that based on the circumstances, a reasonable
person would have believed he was not free to leave. See Morris v. State, 739 S.W.2d 63, 66 (Tex.
Crim. App. 1987) (discussing when custody has been established). 

 The nature and scope of custody has been examined in numerous cases. In the context of a
correctional facility, unauthorized departure from the areas where inmates were assigned or allowed
to be at a given time constituted escape from custody. In Scott v. State, 672 S.W.2d 465 (Tex. Crim.
App. 1984), the defendant crawled through a hole in the detention center building into the fenced
courtyard where the gate was unlocked. The evidence showed that inmates were free to be out of
their cells at the time of the defendant's departure, but that inmates were never allowed into the yard
unaccompanied by a deputy. Id. The court determined that the walls of the building constituted the
boundary of his detention and that he had completed escape although he was recaptured as soon as
he came through the hole. Id. In Crowder v. State, 812 S.W.2d 63 (Tex. App.-Houston [14th Dist.]
1991, pet. ref'd), the defendant's assigned area at the time of his departure was his cell. He was
discovered in a restricted area of the prison which was off-limits to inmates at all times. Id. The
court found that he was no longer in proper custody and that his departure was unauthorized. Id.

 Outside of the correctional facility context, the scope of custody still depends on the area to
which the defendant is assigned. In Webb v. State, 533 S.W.2d 780 (Tex. Crim. App. 1976), the
defendant was an inmate assigned to paint the inside of a courthouse. He was assigned to a
particular room from which he escaped through the window, breaking his leg in the fall enabling the
officers to find him on the roof. In McGowen v. State, 885 S.W.2d 285 (Tex. App.-Beaumont 1994,
no pet.), the defendant broke away from the deputy as he was being transported across the street and
was recaptured by the same deputy a distance down the street. Id. In Casey v. State, 681 S.W.2d
178 (Tex. App.-Houston [14th Dist.] 1984, pet. ref'd), the defendant disobeyed the deputy's
instruction to follow him, after he had been ordered into custody, and instead fled the courtroom. 
He was recaptured only twenty feet outside the courtroom. Id. 

 Relying on Judges Clinton's and Teague's reasoning in their dissenting opinions in Scott,
Hutchinson argues that in order to have departed from custody, he would have had to exit the
courthouse, not just the courtroom. Judge Clinton focused on restraint and Judge Teague on control
and confinement, both arguing, using different terminology, that internal rules of correctional
facilities regulate confinement, but the area within the sheriff's control dictates the scope of custody. 
See Scott, 672 S.W.2d at 467-68. An example of the dissents' reasoning is that one leaving an area
without authorization while remaining in the sheriff's control would have only departed from an area,
not from custody. 

 Because Hutchinson's escape took place in a courthouse, a public building where the flow
of human traffic, while monitored, is not controlled, even the reasoning expressed in the Scott
dissents does not support a finding in this case that the scope of Hutchinson's custody extended to
the outer walls of the courthouse itself regardless of what unauthorized actions he took within the
courthouse. 

 Hutchinson does not dispute that he was charged with a felony offense at the time of his
alleged escape, that he was in the custody of Stewart, and that leaving the courtroom was
unauthorized. The only element about which Hutchinson challenges the legal sufficiency is that his
actions constituted a departure from custody.

 Stewart testified he escorted Hutchinson into the courtroom for the purpose of the hearing. 
Several witnesses testified Hutchinson was not given permission to exit the courtroom without being
accompanied by a deputy. Hutchinson testified he had never been allowed to walk through the halls
of the courthouse unaccompanied when he was in custody. Stewart testified he had taken defendants
back and forth to the holding cell while Hutchinson was in the courtroom. Additionally, before
Hutchinson ran from the courtroom, the judge inquired as to who was watching the defendant,
indicating perhaps the defendant should not have been up and walking around at will, and the
prosecutor began to address Hutchinson. If all these circumstances would fail to make a reasonable
person believe he was not free to leave, then the bailiff yelling after him to stop certainly would have. 

 Looking at the evidence in the light most favorable to the prosecution, the evidence was
legally sufficient to support a finding of the essential elements. This includes a determination that
Hutchinson had departed from the physical limitation, restraint, and control exercised by the deputy
charged with custody that within the circumstances would have caused a reasonable person to
believe he was not free to leave and was expected to obey the officers of the court. Hutchinson's first
point of error is overruled. 

 In his second point of error, Hutchinson contends the evidence was factually insufficient to
support his conviction. While there is no evidence in the record Hutchinson was informed by
Stewart or anyone else he was to remain inside the courtroom while the deputy escorted the other
defendants to the holding cell, this lack of evidence does not make the verdict so contrary to the
overwhelming weight of the evidence as to be clearly wrong or unjust, as a reasonable jury could
have concluded the circumstances indicated a reasonable person would have believed he was not free
to leave and was expected to obey the officers of the court. Therefore, the evidence was factually
sufficient to support Hutchinson's conviction for felony escape. Hutchinson's second point of error
is overruled. 


 The judgment of the trial court is affirmed. 



 Ben Z. Grant

 Justice


Date Submitted: January 31, 2002

Date Decided: February 12, 2002


Do Not Publish